**H. Calvin and Anne F. WALTER, Billy Joe and Barbara H. Guess, Tom T. Pace, Jr. and Estate of Nancy H. Pace, Deceased, Tom T. Pace, III, Robert J. English, Roy A. Wedekind, Jr. and Rhys G. Claiborne (83–1782); Morgan Brown Ayres, Jr. and Cynthia Ann Ayres, Campbell Wallace, Jr. and Joan E. Wallace, Morgan B. Ayres and Patricia M. Ayres, William R. and Marie Banks, Donald L. Jackson, Thomas M. and Murray O. Ayres, Jack T. and Eugenia C. Bush, W. Zane and Darlene Daniel (83–1795), Petitioners-Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.**

**Nos. 83–1782, 83–1795.**

United States Court of Appeals, Sixth Circuit.

Argued Dec. 3, 1984.
Decided Jan. 15, 1985.

Leslie Shields, argued, Kramer, Johnson, Rayson, McVeigh & Leake, Knoxville, Tenn., for petitioners-appellants in both cases.

Joel Gerber, Acting Chief Counsel, Internal Revenue Service, Washington, D.C., Glenn L. Archer, Jr. [Lead Counsel], Michael L. Paup, Gary R. Allen, Gayle P. Miller, argued, Chief App. Sect., Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee in both cases.

Before EDWARDS and JONES, Circuit Judges; and PHILLIPS, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

This action is a consolidation of fifteen separate appeals; therefore, the appellants [1] are numerous. They are Mr. and Mrs. Morgan B. Ayres, Jr., H. Calvin Walter, Billy Joe Guess, Tom T. Pace, Jr., Campbell Wallace, Jr., William R. Banks, Glen R. Clairborne, Thomas M. Ayres, Roy Wedekind, Jr., Jack T. Bush, W. Zane Daniel. Misters Donald L. Jackson, Tom T. Pace, III, and Robert J. English are also appellants. All of the appellants appeal the Tax Court's decision which disallowed certain deductions for depreciation and expenses incurred or paid by appellants' partnership during the period from January 10, 1975 to October 28, 1975. Two of the appellants, Mr. and Mrs. Walters, also appeal the Tax Court's decision, which assessed an additional tax under 26 U.S.C. § 6651(a)(1) (1954) for willfully neglecting to timely file their joint return. Upon consideration of the issues presented by this appeal, we affirm.

Some of the facts of this case are undisputed because they were established by stipulation. While we summarize those facts, a more thorough statement of the case may be found in the opinion of the Tax Court, *Morgan Brown Ayres, Jr. et al. v. Commissioner*, T.C. Memo. 1983-202 [83-202 P-H Memo TC].

---

1. Most of the appellants filed joint returns. Consequently, their spouses are also listed as appellants. Not each spouse, however, became a partner in the limited partnership denominated Northshore Associates, Ltd.

## A

On January 10, 1975 Glen Claiborne, H. Calvin Walter, Tom Pace, Sam Mars, Pat Fultz (the Claiborne Group), and Westwood Developers Inc. (Westwood) executed a hybrid agreement entitled "Agreement of Purchase and Sale of Real Estate and Limited Partnership Agreement." The agreement was hybrid because it combined a real estate sales contract with a partnership contract. The partnership contract provided that the members of the Claiborne Group would be limited partners and that Westwood, as trustee for Northshore Center Operating (NCO), would be the general partner of Northshore Associates, Ltd. (Northshore Ltd.). The sales contract provided that Westwood, as trustee for NCO, would sell and Northshore Ltd. would purchase a 75% undivided interest in a group of three office buildings (the Complex), which were equitably owned by NCO and legally owned by Westwood.

The sales contract also provided for an abatement of principal or interest upon the occurrence or existence of several conditions. Those conditions included (1) NCO's failure to construct a fourth office building (Northshore IV), (2) less than 92.5% occupancy of the Complex, and (3) the filing of a foreclosure action against any property owned by Northshore Ltd. The sales contract further established that NCO had to demonstrate that it could pay $1,400,000 in outstanding debts that could encumber the title to the Complex.

By May, 1975, the Complex's occupancy rate reached the required 92.5%. By October 6, 1975, the Complex's clouded title was cleared. On or about October 11, 1975, the condition concerning the construction of Northshore IV was waived. Subsequently, NCO obtained several loans ($800,000 from Hamilton National Bank of Knoxville; $600,000 from Valley Fidelity Bank of Knoxville; $63,500 from a company denominated Masada-Brunswick) that were to be used to repay the $1,400,000 in outstanding debts.

On October 27, 1975, Claiborne drew checks payable to banks that had loaned funds to NCO. On October 28, 1975, the deed of trust for the Complex, which referred to a $1,625,000 purchase money mortgage that had been executed by Claiborne between January 10, 1975 and October 28, 1975, was notarized. On October 29, 1975, the deed was recorded. Between November 17, 1974 and January 7, 1975, Claiborne drew four more checks, which were made payable to Northside Ltd.

Ending on December 22, 1975 and beginning on October 17, 1975, Northshore Ltd. admitted eleven of the appellants as limited partners. On July 2, 1976, Northshore Ltd. recorded a certificate of limited partnership and listed all of the appellants as limited partners.

For the calendar year of 1975, Northshore Ltd.'s income tax return showed an ordinary loss of $896,611.31, but its amended return reduced that loss to $830,826. Each appellant claimed a deduction for a proportionate share of the losses incurred by Northshore Ltd. for operation of the Complex from January 10, 1975 through December 31, 1975. The Commissioner, however, disallowed that portion covering January 10, 1975 to October 28, 1975 (300 days) and allowed that portion covering October 28, 1975 (65 days) until the end of the taxable year. The Commissioner's rationale was obvious: NCO incurred the expenses and depreciation from January 1, 1975 to October 28, 1975 and appellants incurred the expenses and depreciation beginning on October 28, 1975. Consequently, the Commissioner assessed appellants' deficiencies and sent notices to that effect.

## B

H. Calvin Walter signed and filed on or before April 15, 1976 Form 2688, which requested May 15, 1976 as the extended filing date for his joint Federal income tax return for 1975. Walter, however, believed that he was signing and filing Form 4868, which would have automatically extended his filing date to June 15, 1976. Based upon that belief, Walter listed June 14, 1976 on his office diary as the due date for filing his 1975 tax return. Consequently,

he mailed the return in an envelope postmarked June 14, 1976 to the Memphis Internal Revenue Service Center, which received it on June 15, 1976. Subsequently, the Commissioner sent the Walters a notice of deficiency which indicated that they were assessed an additional tax of $774.32 pursuant to 26 U.S.C. § 6651(a)(1) (1954).

## C

All of the appellants requested that the Tax Court review the Commissioner's disallowance of deductions for a proportionate share of the losses incurred by Northshore Ltd. for its operation of the Complex from January 10, 1975 through December 31, 1975. Mr. and Mrs. Walter also requested review of the Commissioner's decision that they had no reasonable cause to delay filing their return. The Tax Court, however, decided that the Commissioner correctly disallowed the deductions because Northshore Ltd. acquired beneficial ownership of the Complex on or after October 28, 1975. The Tax Court also decided that the Commissioner correctly assessed Mr. and Mrs. Walter an additional tax because they had no reasonable cause to delay filing of their return. Consequently, the Tax Court affirmed the Commissioner's decisions.

## D

■■■ Courts of appeals have exclusive jurisdiction to review decisions of the Tax Court "in the same manner and to the same extent as decisions of the district courts in civil actions tried without a jury." 26 U.S.C. § 7482. In a civil action tried without a jury a district court's findings of fact are not to be set aside unless they are clearly erroneous. Fed.R.Civ.P. 52(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the

reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Kennedy v. Commissioner*, 671 F.2d 167 (6th Cir.1982). Findings of ultimate fact which result from the application of legal principles to subsidiary facts are subject to *de novo* review, as are the Tax Court's conclusions of law. *See Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 143 (6th Cir.1983).

### 1

#### Beneficial Ownership

The Tax Court did not determine when Northshore Ltd. was formed. Instead, it assumed that Northshore Ltd. had been formed on or before October 28, 1975 and, then, determined when equitable ownership of the Complex passed from NCO to Northshore Ltd. The Tax Court and the appellants agreed that under *Tennessee Natural Gas Lines v. Commissioner*, 71 T.C. 74, 83 (1978) beneficial ownership passes when sufficient benefits and burdens of ownership pass. In the context of the instant case, NCO's equitable ownership would have passed to Northshore Ltd. when Northshore Ltd.'s ownership attributes in the Complex outweighed NCO's ownership attributes. Consequently, the date of delivery of the deed may not have been the date upon which equitable ownership passed from NCO to Northshore Ltd.

Before the Tax Court,[2] appellants set forth two contentions. First, appellants contended that NCO's ownership attributes in the Complex passed to Northshore Ltd. on January 10, 1975, the date the Claiborne Group and Westwood executed the hybrid agreement. Appellants' rationale was that beneficial ownership passes when the par-

2. Appellants and the Commissioner essentially renew arguments on appeal. Appellants, however, make one new argument: because the parties stipulated that appellants Banks, Daniel, Wallace, Jackson, Pace III, and Ayres, Jr. discussed entry into the partnership before January 10, 1975 and empowered Claiborne to act on their behalf on that date, they were partners of Northshore Ltd. as of that date. The first essen-

tial question, however, does not concern when the partnership or when any particular partner relationship began, but instead concerns when equitable ownership passed from NCO to Northshore Ltd. Consequently, appellants argument becomes pertinent only if this Court determines that equitable ownership passed from NCO to Northshore Ltd. on January 10, 1975.

ties intend to enter into a binding contract. According to appellants, the Claiborne Group's and Westwood's intent to enter into a binding agreement on January 10, 1975, is evidenced by the agreement's terms, by the execution of the purchase money mortgage, and by the securing of loans to satisfy the outstanding indebtedness of the Complex. In opposition, the Commissioner contended that because the agreement established several conditions precedent (clear title, 92.5% occupancy, financing, and construction of Northshore IV) equitable ownership did not pass until the closing on October 28, 1975. In reply, appellants contended that what the Commissioner labeled as conditions precedent were, in fact, conditions subsequent. In support, appellants cited *Herbert J. Investment Corporation v. United States*, 360 F.Supp. 825 (E.D.Wis.1973), *aff'd*, 500 F.2d 44 (7th Cir.1974). In response, the Tax Court distinguished *Herbert J. Investment Corp.* and, therefore, concluded that the conditions were precedent and not subsequent.

Second, appellants contended that the following actions signaled the close of the sales contract: (1) signing of the purchase money mortgage in January, 1975; (2) Claiborne's guaranteeing the Hamilton Bank Loan; and (3) Claiborne's co-signing for the Masada-Brunswick loan. The Tax Court, however, concluded that those actions did not indicate that the sales contract was closed. The Court's rationale was fourfold. First, the exact date of the mortgage's execution was unknown, since it contained a typed date of January 10, 1975 and stated that it was of even date with the deed of trust (which was hand dated January 10, 1975, referred to a property survey completed on October 6, 1975, was notarized on October 28, 1975, and was recorded on October 29, 1975). Second, Claiborne testified to his guarantee, but appellants did not produce documentary evidence regarding that guarantee or its underlying loan. Third, appellants did not produce evidence that showed that the funds from the Masada-Brunswick loan were used to pay the Complex's operating expenses. Instead, it appeared that those funds were used for purposes other than payment of the Complex's expenses. Fourth, under the terms of the partnership contract only Westwood could sign or make guarantees concerning the Complex.

The Tax Court also noted other factors that suggested that NCO's equitable ownership did not pass to Northshore Ltd. on January 10, 1975. For example, the terms of the hybrid agreement did not obligate appellants to fund the transaction through an earnest money deposit or a downpayment. The evidence did not indicate that a bank account, into which rents could be deposited when collected from tenants of the Complex and from which operating expenses could be paid, was maintained in the name of Northshore Ltd. or on behalf of Northshore Ltd. There was virtually no change in the management arrangement, either before or after the execution of the hybrid agreement.

■ The Tax Court is correct. The conditions set forth by the hybrid agreement were conditions precedent and not conditions subsequent. Moreover, the factors noted by the Tax Court suggest that equitable ownership passed on or about October 28, 1975, because by then, the $1,625,000 promissory note had been executed and delivered, the conditions precedent had been satisfied or waived, legal title had been transferred, Northshore Ltd. had become obligated to pay the purchase price, and the deed of trust had been recorded and pledged as collateral. This Court, therefore, is not left with a definite and firm conviction that the Tax Court made a mistake. Consequently, the Tax Court's findings are not clearly erroneous.

### 2

### Failure to File Tax Return

The Tax Court found that the Walters' failure to file timely their joint Federal tax return was due to willful neglect and not reasonable care. The Tax Court reasoned that failure to file timely may be due to reasonable cause, only when the taxpayer has exercised ordinary business care and prudence. In the instant case, Mr. Walter totally relied upon his secretary to provide,

read, and respond to the appropriate form. The Tax Court reasoned that if he had read the form and examined its contents, he would have realized that the requested extension date was May 15, 1976 and not June 15, 1976. In the Tax Court's view, Mr. Walter and by implication Mrs. Walter, did not exercise ordinary business care and prudence in placing total reliance on his secretary to obtain and correctly complete the proper form.

The Tax Court's reasoning is correct. "Reasonable cause" under § 6651 means the exercise of ordinary business care and prudence. *In Re Fisk's Estate*, 203 F.2d 358 (6th Cir.1953). Moreover, the Tax Court's finding of no reasonable cause must stand because it is a question of fact, *id.*, that is not clearly erroneous. *Estate of Geraci v. Commissioner*, 502 F.2d 1148, 1149 (6th Cir.1974) (per curiam), *cert. denied*, 420 U.S. 992, 95 S.Ct. 1428, 43 L.Ed.2d 673 (1975). This Court, therefore, is not left with a definite and firm conviction that the Tax Court made a mistake.

For the foregoing reasons we AFFIRM the Tax Court's decisions.